# cIN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

**DAVID MARK DAVIS II,**

v.

Case No. 9:17-CV-00179-RC-ZJH

**ANGELINA COLLEGE BOARD OF TRUSTEES, MICHAEL SIMON AND STEVE HUDMAN**



## PLAINTIFF'S SECOND AMENDED COMPLAINT

## FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

*Pro Se* plaintiff DAVID MARK DAVIS II hereby files this *Plaintiff's Second Amended Complaint for Damages, Declaratory and Injunctive Relief.*

### A. PARTIES

1. Plaintiff, DAVID MARK DAVIS II, is *an individual* that is *a citizen* of the State of Texas.

2. Defendant, MICHAEL SIMON, an individual and a citizen of the State of Texas, may be served with process at 3500 S 1st St, Lufkin, TX 75904.

3. Defendant, STEVE HUDMAN, an individual and a citizen of the State of Texas, may be served with process at 3500 S 1st St, Lufkin, TX 75904.

4. Defendant, ANGELINA COLLEGE BOARD OF TRUSTEES, a local government entity organized under the laws of the state of Texas, may be served by delivering a copy of the

summons and of the complaint to the chief executive officer, MICHAEL SIMON, at 3500 S

1st St, Lufkin, TX 75904.

## B. JURISDICTION

5. The Court has jurisdiction over the lawsuit because the suit arises under *the First and Fourteenth Amendments to* the U.S. Constitution.

6. The Court has jurisdiction over the lawsuit because the suit arises under Section 504 of the Rehabilitation Act of 1973.

## C. VENUE

7. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## D. CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

## E. FACTS

9. Plaintiff initially attended college at Angelina College during the Spring 2002 semester. After that, Plaintiff attended off and on without issue until the Spring 2007 semester when then Angelina College President Larry Phillips involuntarily removed Plaintiff from EMS classes over his objections on the sole basis that Plaintiff is autistic and Mr. Phillips didn't feel an autistic student could succeed in an EMS program. This removal was conducted even following Plaintiff providing the College an unconditional medical release and statement in support of enrollment from his mental health provider at the request of the EMS program director at the beginning of the semester.

10.    After being unlawfully discriminated against by Mr. Phillips, plaintiff became very

vocal as to misconduct at the College, including misconduct in the Records Office by the

College Registrar.

11.    In the Spring of 2008, Ms. Myrnia Boyd and former employee Ms. Brenda Ross made a

complaint that Plaintiff student was stalking Ms. Boyd. She made several very factually

contested allegations against Davis which Davis argues were motived by his complaining

against her supervisor, the College Registrar.  Plaintiff asserts that he never followed Boyd at

work, after work or anytime, he did not make repeated trips to Boyd's office in a single day

specifically looking for her, he did not make any serious or playful threatening statements to

Boyd regarding physical harm to Boyd on the Angelina College campus or anywhere else,

Plaintiff has never assaulted his brother let alone hospitalized for assaulting his brother has

Boyd claims.

12.    Plaintiff only heard of Boyd's complaints after his removal from classes and being

stopped by former Lufkin PD [then[1]] Cpl. David Casper. At the stop,

Cpl. Casper didn't mention anything about Boyd's complaint's, he just said President

Phillips told him that Plaintiff's presence on campus was unwanted and was a disturbance[2].

Shortly after Plaintiff received the trespass warning, he called the College and was given

permission by former Vice President Steven Watters ("VP Watters") to come discuss the

reasoning behind why his presence was unwanted. VP Watters vaguely informed Plaintiff

---

[1] Cpl. Casper later promoted to Sgt and served as the public relations contact at Lufkin PD before later resigning for another job. Sgt Casper was one of the best on the force so he is in not way saying that his departure was anything other than a personal choice to provide himself what he obviously felt was a better position.

[2] Please note that Plaintiff had been complaining quite a bit at this point regarding issues like Phillips' discriminating against him and removing him from class because Phillips felt an autistic student cant succeed as an EMT in that program, (even though Plaintiff's medical provider give the College a release clearing and recommending him a while before this even occurred)

Plaintiff's Second Amended Complaint                    Davis v. Angelina College, Et. El.

that Boyd had complained. VP Watters then stated that the College didn't feel Plaintiff was a threat to anyone on campus. Plaintiff then complained to VP Watters as to why he was removed from classed and banned from campus if the College didn't take Boyd's claims seriously, VP Watters responded that Boyd threatened to sue the College if they didn't keep Plaintiff off campus. Without citing any specific authority, VP Watters went on to explain that he felt that the College had some kind of legal duty to make Boyd feel safe on campus. This argument for justification was later repeated many times by Angelina College officials up and until the filing of this suit. Even after being asked many times, and in light of the fact their position infringed on Plaintiff's rights, none of them have provided plaintiff with any authority as to what regulation, statute, constitutional law, or caselaw would require the College to protect an employee from something they felt was a baseless claim of life endangerment or wasn't otherwise substantiated.

13.   Angelina College President Larry Phillips investigated the complaints but never initiated disciplinary action against Davis under the College's student disciplinary plan. Phillips instead took the ultra vires action of removing Davis from classes without the notice, hearing or appeal rights afforded Plaintiff by Angelina College student disciplinary policy and had the Lufkin Police Department issue Davis a no trespassing warning.

14.   Dr. Phillips also issued an order that any future enrollment by Plaintiff would have to be online only. Again, Dr. Phillips made this order and restriction outside the established College Disciplinary process without following the notice, hearing or appeal rights afforded Plaintiff in said disciplinary policy.

15.   Plaintiff appealed this action to the Board of Trustees, but they took no action.

16. Dr. Phillips never enforced his order and allowed Plaintiff to attend Angelina College again in future semesters without restrictions.

17. In spring 2010, Plaintiff successfully took an online speech class without incident while he was in the United States Air Force stationed at the 315th Training Squadron for training as an intelligence analyst.

18. Plaintiff successfully took a face-to-face paralegal class in the fall of 2014 without incident.

19. Plaintiff took face-to-face classes in the Spring of 2015 without incident. He dropped the classes about halfway through due to his relocation to Harlingen, Texas near the end of the semester.

20. Plaintiff took a break from Angelina College enrollment between 2015 and 2017 while he focused on obtaining a second bachelor degree, law degree and MBA using his military education benefits.

21. In July 2017, Plaintiff filed for disability accommodations for the following qualified disabilities for which he suffers: Post Traumatic Stress Disorder, Anxiety Disorder, Depressive Disorder, all of which are related to Plaintiff's Honorable military service in the United States Armed Forces and United States Intelligence Community as well as the non-service connected developmental disability, Autism Spectrum Disorder[3]. With his application, Plaintiff submitted 731-pages of medical documentation to support his request for disability accommodations.

---

[3] This condition was previously diagnosed as Asperger Disorder. When the Diagnostic and Statistical Manual of Mental Disorders (DSM) V edition came out in mid-2013, it controversially removed Asperger Disorder from what it considered a separate diagnosable condition from other autism spectrum disorder's (then referred to as pervasive developmental disorders), and it combined Asperger's syndrome, classic autism, Rett syndrome, childhood disintegrative disorder and pervasive developmental disorder (not otherwise specified) into a single diagnostic classification: Autism Spectrum Disorder.

Plaintiff's Second Amended Complaint                Davis v. Angelina College, Et. El.

22.    On August 8, 2017, Dean Hunt emailed the Plaintiff demanding that Plaintiff provide more documentation than the volumes he had already provided.

23.    On August 8, 2017, plaintiff, by email, complained to Dean Hunt about her overly burdensome request for more documentation. Defendant Simon was included in this email. Dean Hunt responded by involving Defendant Dean Steve Hudman into the matter.

24.    Dean Hudman immediately began harassing the plaintiff by bringing up a baseless complaint that was made by an Angelina College staff member, Myrnia Boyd, approximately 10 years prior which was investigated by the prior College administration without formal disciplinary action being taken under the Angelina College student disciplinary policy. As stated previously, senior college officials had conceded that they didn't feel Boyd's feelings were justified, yet, they nevertheless felt they had to enforce some non-existent duty to Boyd feel safe from the same feelings that the College said had no basis. Hudman claimed this respecting this non-existent duty was more important than respecting Plaintiff's right's.

25.    On August 11, 2017 and as part of his pattern of harassing conduct, Dean Hudman issued a student summons via email demanding Plaintiff appear in his office on August 11, 2017 at 3:00PM, just a few short hours after the summons was issued. Being that plaintiff is a busy adult that he is, Plaintiff advised Dean Hudman that he could not attend the last minute meeting by responding to his email by stating *"I will be out of town this afternoon"* . Dean Hudman responded by email stating: *"I received your email stating you would be out of town today. I am amicable to meeting during normally business hours Monday August 14, 2017 at a time that is convenient for you to accommodate your out of town trip.... Please contact my office so I may know when to expect you"*. Plaintiff took this communication as Dean Hudman canceling the Friday afternoon meeting. He never issued another summons

regarding the matter and never again set a date and time for plaintiff to appear. Dean Hudman contends that his *request of "Please contact my office so I may know when to expect you"* was the same thing as issuing a new summons. Plaintiff took this statement as a voluntary request since if Dean Hudman really wanted to meet with plaintiff (and later write him up for no showing), then he would have given plaintiff a specific time and place to appear – Dean Hudman did not do this.

26.    On August 18, 2017, Dean Hudman proceeded to impose a disciplinary action on plaintiff without providing plaintiff with any notice, hearing or other meaningful opportunity to respond to Hudman's accusations. Hudman alleged that Plaintiff was being disciplined for failure to show up for the above referenced hearing and that as a result Davis was not allowed to take campus based classes. Davis initiated a grievance citing the blatant violation of the disciplinary due process requirements spelled out in Angelina College Policy and as constitutionally required by  Dixon v. Alabama State Board of Education, 294 F. 2d 150 (5th Cir. 1961). While Hudman subsequently reset Davis' disciplinary action for hearing on August 30, 2017, he refused to remove the restrictions that he unconstitutionally imposed as part of the August 18, 2017 ex parte disciplinary action while the new disciplinary action was pending. Plaintiff argues that this baseless disciplinary action and the denial of rights under Dixon and College Policy were motivated by Davis' previous complaints to Angelina College regarding illegal harassment for Davis standing up for himself in the disability accommodations process.

27.    On August 25, 2017, Dean Hudman again initiated a disciplinary action against Davis for failure to show up at the August 11, 2017 meeting that he canceled. This time Hudman did provide Davis with notice and a hearing. Dean Hudman set the hearing for August 30,

2017. In said notice, Dean Hudman nowhere mentioned that Davis failed to show up on Monday, August 14, 2017, but only cited the August 11, 2017 summons for the meeting Dean Hudman canceled. This omition was key to the charges against Plaintiff. How do you find someone guilty of failure to show up at a meeting if you leave out the part of them failing to show up in the actual notice? This would in and of itself make the notice constitutionally deficient since it fails to allege the minimal facts necessary to prove a claim. At the hearing, Dean Hudman nevertheless proceeded to admit evidence and ultimately convict Davis of failing to show up at the alleged August 14, 2017 hearing (which there is no evidence that a time and date were ever set) despite not mentioning this alleged hearing anywhere in the notice of charges. Plaintiff argues that this baseless disciplinary action and intentional failure to provide constitutionally adequate notice was motivated by Davis' previous complaints to Angelina College regarding illegal harassment for Davis standing up for himself in the disability accommodations process.

28.     On September 5, 2017, Plaintiff voluntarily met with Dean Hudman regarding Plaintiff's status as a student. Prior to the meeting, Plaintiff demanded that Hudman provide Plaintiff with notice of the accusations being made against him. Hudman refused Plaintiff's request on the basis that he claims the meeting wasn't disciplinary in nature. During this meeting, Dean Hudman informed Plaintiff that in August 2017, Angelina College Records Office Clerk Myrnia Boyd had again made claims that Plaintiff stalked her back in 2008 and she again confirmed to Dean Hudman all of the accusations that she had made a decade prior. Dean Hudman informed Davis that while making no new accusations, Ms. Boyd nevertheless claimed that she still feared for her life with Davis on campus. During said meeting, Davis again disputed Ms. Boyd's claims and even pointed out that she never called

the police to report any of her alleged fears. Davis further pointed out that he was never subjected to college sanctioned disciplinary action as a result of the accusations. Like VP Watters did years prior, Dean Hudman conceded during the meeting that he felt Boyd's feelings of fear were not substantiated and that any action he took was based on this alleged duty to make her feel safe at work. Following the meeting, Dean Hudman sent Davis a letter stating that Davis would be allowed to attend class on campus, but would be subject to restrictions not imposed on other students based on Ms. Boyd's accusations.

29. Plaintiff avers this violates his right to due process based on the following factual statements: (1) Hudman expressly claimed in an email that the meeting wasn't disciplinary related so he didn't have to provide Plaintiff with notice, but then proceeded to unfairly ambush Plaintiff at the meeting with disciplinary actions when he knew that was the basis for the meeting in the first place; (2) Hudman conceded that the allegations of life endangerment had no merit; (3) Hudman substantially deviated from College policy when he set up the meeting, held the meeting and imposed punishment; (4) Angelina College policy does not allow Hudman, or any other Defendant, to restrict Plaintiff the way he did; (5) the Angelina College Board of Trustee's, through the clearly established Angelina College Grievance Policy, specifically forbids Hudman, or any other Defendant, from imposing restrictions on Plaintiff's right to petition; and (6) the Angelina College Board of Trustee's, through the clearly established Angelina College Grievance Policy, specifically forbids Hudman, or any other Defendant, from punishing Plaintiff for exercising his right to petition.

30. By various follow up emails Davis sent in response, Davis not only objected to Hudman's purposed restrictions as a matter of public policy, but he also challenged Hudman's legal authority to issue them in the first place in this instance. Davis cited the fact

that no college sanctioned disciplinary action was ever taken against Davis regarding the stalking claims and the fact that the Constitution and Angelina College Policy didn't allow this type restrictions to be imposed outside of the established disciplinary policy. Angelina College later responded on October 10, 2017 that two sections of policy allowed Hudman's actions. First it cited the College Disciplinary Process (FLB), however, it is very noteworthy that Davis was never provided the procedural requirements of this process (notice, hearing, appeal) for this to be applicable. Second, the College cited College Policy DIA – *Employee Freedom from Discrimination, Harassment, and Retaliation*, but this provision doesn't apply to students, and even if it did, the College is not alleging that Davis engaged in protected discrimination such as EEO type discrimination (nor does the policy allow the restrictions if they were). As such, Davis contends that neither of the cited authorities provided Dean Hudman with the necessary legal justification to place disciplinary restrictions on Davis outside the disciplinary process (as he is attempting to do).

31.     On September 7, 2017 in response to Ms. Boyd's malicious and false accusations, Davis exercised his First Amendment right to petition and filed a grievance pursuant the Angelina College grievance policy with Ms. Boyd alleging that she was making false statements in violation of the Texas Defamation Mitigation Act and that she was denying Davis due process by using her position under color of state law to keep Davis from enjoying the full benefits of attending Angelina College that all other students are providing. Since his grievances were sent by email and there is an easily ability to block emails from certain recipients, it is uncertain of Boyd ever got these grievances since she never acknowledged or responded to them.

32.     Shortly after plaintiff filed his two grievances, Hudman, on behalf of the College, shut down plaintiff's attempt to file the grievance against Boyd in his letter dated September 12, 2017. In said letter, Hudman stated *"[t]he College does not recognize your grievances against Mrs. Boyd for this reason and will not continue the grievance process in this matter"*. In his attempt to justify this, he cited in the letter that he *felt* that the grievances filed in response to Boyd's accusations were somehow *"intimidation tactics and retaliatory"* in nature. A review of the two grievances, which were filed in response to Boyd repeatedly making serious false accusations against Plaintiff, would show that Plaintiff was very civil in his grievance towards Boyd. No illegal threats were made by Plaintiff, nor was he obscene or otherwise inappropriate. Plaintiff cited clearly established legal authority for filing the grievances within his grievances (such as the Texas Defamation Mitigation Act where Plaintiff expressly stated the purpose was to serve notice and request for removal under the act that is legally required to be served on a defendant prior to being able to seek certain remedies in suit), Hudman nevertheless ignored Plaintiff's patently valid reason for filing the grievance (i.e. to use the legal process to clear his name) and somehow found Plaintiff's good faith actions to be *"intimidation tactics and retaliatory"*. It is noteworthy to mention that Hudman failed to ever cite any reason why he felt the grievances were *"intimidation tactics and retaliatory"* as he claimed, he simply made the assertion while ignoring the clearly established legal principals the Plaintiff was acting upon (i.e. First Amendment, Defendant's own grievance policy, Texas Defamation Mitigation Act, etc.). Plaintiff even attempted, by email, to demand justification from not just Hudman but also Simon as to why Hudman was able to dismiss the well plead and legally sound grievances when even the College's own policy didn't give Hudman the authority to do so. Not surprisingly, Plaintiff

was provided no response to these complaints and Simon eventually found Hudman's repeated ultra vires acts (including those ultra vires acts that caused plaintiff to suffer the depravation of his constitutional rights) towards Plaintiff to not be something that he needed to rectify.

33.     On September 12, 2017, Dean Hudman initiated a disciplinary hearing for Plaintiff based on accusations that Davis violated an order not to contact Boyd, including through grievances. The subject matter of the disciplinary action was the two grievances referenced immediately above. At the hearing, Davis argued that he had a constitutional right to file the grievances with Ms. Boyd, Dean Hudman's alleged order was unconstitutional as it violated due process, Dean Hudman's alleged order was ultra vires and beyond his authority to issue in this instance and that Dean Hudman's order was pre-empted by the Texas Defamation Mitigation Act, which requires a Plaintiff to first contact the defendant directly to retract a defamatory statement prior to imitating suit against a defendant for defamation. Hudman rejected all of Davis' arguments and found him guilty of violating the alleged order not to file a grievance with Boyd.

34.     Davis almost immediately appealed the above finding of guilt and punishment to the College's Student Conduct Panel and College President Michael Simon based on the same defenses but was ultimately found guilty and expelled.

35.     Hudman, Simon and members of the Student Conduct Panel were very well aware of Davis' discrimination complaints at the time they acted. Specifically, Hudman and Simon were part of the email chain where the complaints and opposition to unlawful 504 related activities were being made. Additionally, Simon was the contact person for who to file the complaints with and after Plaintiff filed the 504 complaints, Simon acknowledged them,

referred them to another senior staff member for investigation member and Hudman was investigated through at least one interview by the investigator based on the grievances. Simon ultimately was the final authority to approve expelling Plaintiff. Simon made this expulsion determination long after he first found out about Plaintiff's 504 complaints.

36.     Based on the Defendants' response to Plaintiff's protected First Amendment grievances and being expelled for them, Plaintiff has not felt comfortable enough to further petition Boyd with what limited right to petition he may or may not now have. This is based in part on the College's longstanding practice of: (1) calling the police to have Plaintiff banned for a staff members complaint that it conceded was justified, when they called the Lufkin Police, they hadn't even told Plaintiff of the complaints or provided him any due process nor did they ever follow policy when they did so; and (2) expelling Plaintiff simply because he exercised his legal right to complain about an unjust act in a civil manner. Based on their conduct, Plaintiff reasonably fears that he will suffer criminal complaints and other legal action if he goes to the College to further complain about the incident. Plaintiff has not been up to the College to complain since he was expelled.

37.     Davis has exhausted all available administrative remedies to correct this injustice.

38.     At all times relevant to this suit, all Defendants' were acting under color of state law.

## F. COUNT 1 – 42 U.S.C. §1983: FIRST AMENDMENT RETALIATION CLAIM AGAINST SIMON

39. Under the First Amendment, a citizen has the right to petition the government and its agents for the redress of grievances. In order to prove the defendant deprived the plaintiff of this First Amendment right, the plaintiff must prove that defendant Simon violated the following additional elements by a preponderance of the evidence:

Plaintiff's Second Amended Complaint                    Davis v. Angelina College, Et. El.

1. the plaintiff was engaged in a constitutionally protected activity;

2. the defendant's actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and

3. the plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct.

40. Based on the above referenced facts as listed in Section E of this Second Amended Complaint; Plaintiff has a good faith reason to believe that discovery will prove the following facts:

a) At all times relevant, defendant was acting under color of state law in his capacity as an agent of defendant Angelina College

b) Plaintiff petitioned the government for redress of grievances on at least two separate occasions. These petitions were filed directly with a government agent, specifically Myrnia Boyd, and were filed pursuant with the defendant Angelina College's grievance procedure. In both of his petition, plaintiff sought the government provide him assistance and change an action that was harming plaintiff's good name and reputation.

c) By the defendant's own admissions, the above referenced grievances to Ms. Boyd were the sole reason plaintiff was expelled from Angelina College. The defendant's decision to expel plaintiff in retaliation for filing a grievance would chill a person of ordinary firmness from continuing to engage in the protected activity.

d) Defendant has stated that the grievances were the sole motivating factor for expelling plaintiff from defendant Angelina College.

e) Defendant Simon is sued in his individual and official capacity for damages and in his official capacity for injunctive and declaratory relief.

Davis v. Angelina College, Et. El.

## G. COUNT 2 – 42 U.S.C. §1983: FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST SIMON

41. In order to prevail on his § 1983 claim against the supervisory defendant, Michael Simon, the plaintiff must prove each of the following elements by a preponderance of the evidence:

> 1. the supervisory defendant acted under color of state law;

> 2. the failure to act of the supervisory defendant's subordinate Steve Hudman deprived the plaintiff of his particular rights under the United States Constitution; and

> 3. the supervisory defendant directed his subordinate in the act failure to act that deprived the plaintiff of these rights;

42. Based on the above referenced facts as listed in Section E of this Second Amended Complaint; Plaintiff has a good faith reason to believe that discovery will prove the following facts:

a) At all times relevant, defendant was acting under color of state law in his capacity as an agent of defendant Angelina College

b) For the reasons outline in Count 4 of this Amended Complaint, Simon's subordinate Steve Hudman deprived the plaintiff of his particular rights under the United States Constitution

c) Simon, in part, directed Hudman to violate plaintiff's right to due process and was an active participant of the civil rights violation

d) Simon acted deliberately indifferent to plaintiff's constitutional rights in his supervisory relationship to Hudman

e) Defendant Simon is sued in his individual and official capacity for damages and in his official capacity for injunctive and declaratory relief.

## H. COUNT 3 – 42 U.S.C. §1983: FIRST AMENDMENT RETALIATION CLAIM AGAINST HUDMAN

43. Under the First Amendment, a citizen has the right to petition the government and its agents for the redress of grievances. In order to prove the defendant deprived the plaintiff of this First Amendment right, the plaintiff must prove that defendant Hudman violated the following additional elements by a preponderance of the evidence:

    1. the plaintiff was engaged in a constitutionally protected activity;

    2. the defendant's actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and

    3. the plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct.

44. Based on the above referenced facts as listed in Section E of this Second Amended Complaint; Plaintiff has a good faith reason to believe that discovery will prove the following facts:

a) At all times relevant, defendant was acting under color of state law in his capacity as an agent of defendant Angelina College

b) Plaintiff petitioned the government for redress of grievances on at least two separate occasions. These petitions were filed directly with a government agent, specifically Myrnia Boyd, and were filed pursuant with the defendant Angelina College's grievance procedure. In both of his petition, plaintiff sought the government provide

him assistance and change an action that was harming plaintiff's good name and reputation.

c) By the defendant's own admissions, the above referenced grievances to Ms. Boyd were the sole reason plaintiff was expelled from Angelina College. The defendant's decision to expel plaintiff in retaliation for filing a grievance would chill a person of ordinary firmness from continuing to engage in the protected activity.

d) Defendant has stated that the grievances were the sole motivating factor for expelling plaintiff from defendant Angelina College.

e) Defendant Hudman is sued in his individual and official capacity for damages and in his official capacity for injunctive and declaratory relief.

## I. COUNT 4 – 42 U.S.C. §1983: FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST HUDMAN

45. In order to prevail on his § 1983 claim against the defendant Hudman, the plaintiff must prove each of the following elements by a preponderance of the evidence:

    1. the defendant acted under color of state law; and

    2. the acts of the defendant deprived the plaintiff of his particular rights under the United States Constitution.

46. A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

47. Based on the above referenced facts as listed in Section E of this Second Amended Complaint; Plaintiff has a good faith reason to believe that discovery will prove the following facts:

a) At all times relevant, defendant was acting under color of state law in his capacity as an agent of defendant Angelina College;; and

b) On September 5, 2017 and through an official order, defendant deprived plaintiff of his liberty, specially, the right to freedom of speech and petition without first providing him adequate notice or an adequate hearing as required by the Due Process Clause of the Fourteenth Amendment;

c) Defendant will likely contend that on September 5, 2017, it provided plaintiff due process when it deprived the plaintiff of his constitutional rights. However, defendant Hudman has maintained that the September 5, 2017 meeting[4] was not related to disciplinary action and he never provided plaintiff with notice, which plaintiff demanded, prior to the meeting.

d) Defendant Hudman conceded that Boyd's complaint of feeling life endangerment, the same exact complaint he relies on to attempt to justify the restriction in question, was baseless.

e) As stated in Section E, Defendant has a pattern of grossly unfair non-sanctioned procedures being followed when they dealt with plaintiff.

f) Defendant Hudman is sued in his individual and official capacity for damages and in his official capacity for injunctive and declaratory relief.


## J. COUNT 5 – SECTION 504 RETALIATION CLAIM AGAINST ANGELINA COLLEGE

---

[4] Defendant Hudman has maintained that the September 5, 2017 meeting was just a casual meeting regarding Mr. Davis' enrollment during the Fall 2017 semester. Hudman did not change this position under after this lawsuit was initially filed. Since Hudman told Davis the meeting wasn't disciplinary related, Davis wasn't able to plan to defend the accusations against him that were ambushed on Davis at the last minute.

48. It is unlawful for a person or entity to discriminate against any individual because that individual has opposed any act or practice that he or she reasonably believes to be unlawful under the Section 504 of the Rehabilitation Act of 1973 (Section 504) or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Section 504.

49. Disability is not an element of a retaliation action under the Section 504.

50. For the plaintiff to establish retaliation in violation of the Section 504, the plaintiff must prove the following elements by a preponderance of evidence:

    1. the plaintiff engaged in conduct protected under the Section 504;

    2. the plaintiff was subjected to an adverse action at the time, or after, the protected conduct occurred;

    3. the defendant retaliated against the plaintiff because of his conduct protected under the Section 504.

51. Based on the above referenced facts as listed in Section E of this Second Amended Complaint; Plaintiff has a good faith reason to believe that discovery will prove the following facts:

    a) In or around early August 2017, plaintiff made several complaints of unlawful discrimination on the basis of disability after defendant Angelina College began stonewalling his disability accommodations that he sought for military service connected disabilities which interfere with his everyday life.

b) Defendant subjected plaintiff to adverse disciplinary actions for which the reasonable person would find no basis[5] and defendant refused to afford the plaintiff the benefit of the clearly established disciplinary procedure[6] when it imposed restrictions on plaintiff

c) All relevant parties were aware of plaintiff's disability discrimination complaints

d) The defendant would not have subjected plaintiff to BASELESS disciplinary actions and not afford plaintiff the proper disciplinary process but defendant's retaliation for plaintiff's discrimination complaints.

e) Defendant is sued for damages, injunctive and declaratory relief

## K. COUNT 6 – SECTION 504 RETALIATION CLAIM AGAINST ANGELINA COLLEGE

52. It is unlawful for a person or entity to discriminate against any individual because that individual has opposed any act or practice that he or she reasonably believes to be unlawful under the Section 504 of the Rehabilitation Act of 1973 (Section 504) or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Section 504.

53. Disability is not an element of a retaliation action under the Section 504.

54. For the plaintiff to establish retaliation in violation of the Section 504, the plaintiff must prove the following elements by a preponderance of evidence:

---

[5] Plaintiff was disciplined for failure to appear for an official summons. Defendant Hudman never set up a date and time for plaintiff to appear. Plaintiff was nevertheless punished for failure to appear to a meeting that was never set up..

[6] Defendant Hudman refused to follow Angelina College's established disciplinary process when he imposed restrictions on plaintiff on September 5, 2017. Hudman told plaintiff prior to the September 5, 2017 meeting that the meeting wasn't conduct related so he didn't have to provide notice any evidence which would normally be required by Angelina College policy and Fifth Circuit precedent.

Plaintiff's Second Amended Complaint                    Davis v. Angelina College, Et. El.

1. the plaintiff engaged in conduct protected under the Section 504;

2. the plaintiff was subjected to an adverse action at the time, or after, the protected conduct occurred;

3. the defendant expelled the plaintiff because of his conduct protected under the Section 504.

55. Based on the above referenced facts as listed in Section E of this Second Amended Complaint; Plaintiff has a good faith reason to believe that discovery will prove the following facts:

a) In or around early August 2017, plaintiff made several complaints of unlawful discrimination on the basis of disability after defendant Angelina College began stonewalling his disability accommodations that he sought for military service connected disabilities which interfere with his everyday life.

b) Defendant punished Plaintiff with unjustified punishments less that expulsion

c) Defendant eventually subjected Plaintiff to expulsion from Angelina College following his protected complaints

d) All relevant parties were aware of Plaintiff's disability discrimination complaints

e) The defendant would not have expelled Plaintiff had plaintiff not made the discrimination complaints.

f) The defendant would not have punished Plaintiff with unjustified punishments less that expulsion had Plaintiff not made the discrimination complaints.

g) Defendant is sued for damages, injunctive and declaratory relief

## L. REQUEST FOR PERMANENT INJUNCTION

Plaintiff's Second Amended Complaint                    Davis v. Angelina College, Et. El.

56. Plaintiff asks the Court to set his application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against defendant barring it from expelling plaintiff and imposing arbitrary restrictions on his enrollment.

## M. DECLARATORY JUDGMENT

57. Plaintiff asks this Court to enter a declaratory judgment that the aforementioned conduct of defendant violated plaintiff's constitutional rights.

## N. DAMAGES

58. As a direct and proximate result of the defendants actions, plaintiff suffered the following injuries and damages.

    a.    Lost earnings.

    b.    Loss of earning capacity.

    c.    Damage to reputation in the past and future.

    d.    Mental anguish in the past and future.

## O. ATTORNEY FEES & COSTS

59. Plaintiff is entitled to an award of attorney fees, in any, and costs under 42 U.S.C. §1988(b).

## M. PRAYER

60. For these reasons, plaintiff asks for judgment against defendant for the following:

    a.    Actual damages of $100,000

    b.    Punitive damages of 100,000

    c.    Reasonable attorney fees, if any.

Davis v. Angelina College, Et. El.

d.      Prejudgment and postjudgment interest.

e.      Costs of suit.

f.      Permanent Injunction

g.      Declaratory relief

h.      All other relief the Court deems appropriate.

Respectfully Submitted,

David Mark Davis II, MBA, JD
Plaintiff, *Pro Se*
2010 US Hwy 190 W #101
Livingston, Texas 77351
(936) 238-8507
dmarkdavis2@gmail.com[7]

---

[7] Plaintiff consents to service by email

Plaintiff's Second Amended Complaint          Davis v. Angelina College, Et. El.

## CERTIFICATE OF SERVICE

I certify that on the day of filing, a true and correct copy of the foregoing pleading was served

on all parties and/or counsel of record by electronic mail by agreement to the following:

Christopher B. Gilbert
Attorney-in-Charge
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
(713) 554-6744 – Telephone
(713) 583-7698 – Facsimile
cgilbert@thompsonhorton.com

Served by consent via email to:
cgilbert@thompsonhorton.com

Rebecca S. Bailey
Co-Counsel
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
(713)554-6762 – Telephone
(713)583-9364 – Facsimile
rbailey@thompsonhorton.com

Served by consent via email to:
rbailey@thompsonhorton.com

Wayne D. Haglund
Angelina College General
Counsel and Co-Counsel
P.O. Box 713
Lufkin, TX 75902-0713
(936)639-0007 – Telephone
(936)639-0016 -- Facsimile
whaglund@haglundlaw.com

Served by consent via email to:
whaglund@haglundlaw.com

**DAVID MARK DAVIS II**

Plaintiff's Second Amended Complaint

Davis v. Angelina College, Et. El.